IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COLUMBIA

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | : | MAG. NO. |
| INFORMATION ASSOCIATED WITH | : | |
| FACEBOOK USER ID | : | |
| Cristian.gutierrez.58726823 | : | |
| THAT IS STORED AT PREMISES | : | UNDER SEAL |
| CONTROLLED BY FACEBOOK | : | |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Sherman Wooden, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account which is stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered at 151 University Avenue, Palo Alto, California 94301.   The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Title 18 , United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), to require Facebook to disclose to the government records and other information in its possession pertaining to the subscriber or customer operating the websites.

2.     I am a Special Agent with Immigration and Customs Enforcement ("ICE") and have been so employed for more than seven (7) years.  I am currently assigned to the child exploitation group within ICE in the Homeland Security Investigations ("HSI") Washington, D.C. office.  I have received training from the Federal Law Enforcement Training Center and

other law enforcement agencies in the areas of child pornography investigations and pedophile behavior. As part of my current duties as an ICE agent, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252 and 2252A. I have received training in the areas of child pornography and child exploitation and, in my law enforcement capacity, have observed and reviewed numerous examples of child pornography as defined in 18 U.S.C. § 2256 in all forms of media, including computer media. As a federal agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to demonstrate that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## RELEVANT STATUTES

4.      I make this affidavit in connection with a criminal investigation regarding possible violations of 18 U.S.C. § 2251, Production of Child Pornography, and 18 U.S.C. § 2422, Enticement of a Minor.

5.      Title 18, United States Code, Section 2251, provides, in relevant part:

(a)      Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct shall be punished as provided by subsection (e), if such person knows or has

2

reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

6.    Title 18, United States Code, Section 2422, provides, in relevant part:

(b)    Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowing persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

## COMPUTERS AND COMPUTER-RELATED TECHNOLOGY

7.    I have received training in computer crime investigations.  I also own a computer and use computers in the course of my work in law enforcement and have personal knowledge regarding the operation of computers.   Based on this training, experience, and information provided to me by other law enforcement personnel involved in this investigation, I know the following:

a.    The Internet is a global network which allows for the sharing of data across computers attached to the network.

b.    Individual users typically access the Internet through a local Internet Service Provider ("ISP") through a modem or other connection device, such as a cable or Digital Subscriber Line ("DSL").  When accessing the Internet, the ISP will assign each user an Internet Protocol ("IP") address,

3

a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses can also be static, whereby the user's ISP assigns the computer a unique IP address, and that same number is used by the user every time the computer accesses the Internet.

c.      Communication via the Internet can take place through many different mediums; such as accessing a website or sending and receiving electronic mail, also known and referred to herein as "e-mail." E-mail is an electronic form of communication which can contain letter-type correspondence and graphic images. E-mail is similar to conventional paper type mail in that it is addressed from one individual to another.

d.      E-mail messages usually contain a header that which provides screen name, the identity of the Internet access provider, and the return address on the Internet of the individual who originated the message or graphic.

e.      Another well-known component of the Internet is the World Wide Web, or the "Web." The Web is a collection of websites located or stored on different computers throughout the world. Each website is identified by a unique Uniform Resource Locator ("URL"), which identifies the server on which the website information is stored. Users access websites by typing the corresponding URL into their web browser.

## **TECHNICAL BACKGROUND**

8.      Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

9.      Facebook asks users to provide basic contact information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

10.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, to all Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

11.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which

highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

12.     Facebook users can create profiles which include photographs, lists of personal interests, and other information.  Facebook users also can post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links which will typically be visible to anyone who can view the user's profile.

13.     Facebook has a Photos application, where users can upload an unlimited number of albums and photos.  Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user which have that user tagged in them.

14.     Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

6

15. Facebook Notes is a blogging feature available to Facebook users. It enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

16. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

17. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

18. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

19. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: friend lists; groups and networks of which the user is a member; "News Feed" information; "Wall" postings; "Notes"; status updates; links to videos, photographs, articles, and other items; event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

20. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs contain information about the actions taken by the user ID or IP address on

Facebook, including information regarding the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

21.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records containing such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

22.     Therefore, the computers of Facebook are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and account application.

## PROBABLE CAUSE

23.     This investigation began with a computer identified on the Gnutella network[1] by the          following          assigned          Globally          Unique          Identifier          ("GUID")[2]:

---

[1]      The Gnutella network is a peer-to-peer ("P2P") file-sharing network on the Internet. P2P file-sharing allows individuals to meet each other through the Internet, engage in social networking, and trade files. One aspect of P2P file-sharing is that multiple files may be

AEE98EE693192FE22B890585F0DB3800 (hereinafter "Target GUID").  On June 5, 2013, the
Target GUID was connected to the Gnutella network with the Internet Protocol (IP) address
68.48.56.82 (hereinafter "Target IP").

24.    Using a software program, I was able to obtain historical information about the
Target IP, including previously associated GUIDs and suspect child pornography files available
for sharing.

25.    The Target GUID has been associated on the Gnutella network with only one
public IP address: the Target IP.  The Target IP and the Target GUID were initially seen on the
Gnutella network on May 4, 2013 and last seen on August 13, 2013.

26.    From May 4, 2013 until August 13, 2013, the Target GUID has had a total of 79
suspect child pornography files available for sharing through the Gnutella network.  Your affiant
used the law enforcement software program to view the file name, ed2k hash value, GUID, and
additional information for all suspect child pornography files available for sharing by the Target
GUID, including the 79 files associated with the Target IP.  Nearly all of the file names

---

downloaded in parallel, which permits downloading more than one file at a time.  A P2P file
transfer is assisted by reference to an Internet Protocol ("IP") address.  This address, expressed
as four sets of numbers separated by decimal points, is unique to a computer during an online
session.  The IP address identifies the location of the computer with which the address is
associated, making it possible for data to be transferred between computers.  Third-party
software is available to identify the IP address of the P2P computer sending a file.  Such software
monitors and logs Internet and local network traffic.

[2]    The Globally Unique Identifier is a series of letters and numbers assigned to a computer
when a file-sharing client is installed on a computer. The GUID will remain the same even if the
user utilizes a different IP address. This allows law enforcement to track IP addresses across the
Internet when a user receives different IP addresses from the ISP.

contained terms that indicated child pornography, such as "10 yo", "11 yo", "preteen", "pthc", "boy", and "pedo".

27.     On June 5, 2013, I observed a computer with the Target IP on the Gnutella network with approximately 70 suspect child pornography files available for sharing.   On that date, at 11:46:14 Greenwich Mean Time (GMT) – 0400 hours, I established a direct connection with the computer utilizing the Target IP and downloaded one video file, which upon review, I determined to contain suspect child pornography:

> File Name: "[14yo & 15yo] bibcam – unknown (2 boys).avi"
> SHA 1 Hash Value: I5DC2QZQHG7BMEOPGBBDHNOGDNZWEAM5

The video file was 8 minutes and 53 seconds in length and began with two (2) minor males who appeared to be between 14 and 16 years old.   The two minor males were seated in front of a web camera at the beginning of the video.   Around two (2) minutes into the video, one of the male minors removed his pants and underwear and displayed his erect penis for the camera.   The male minor also bent over and separated his buttocks to reveal his anus.

28.     I identified the ISP for the Target IP to be Comcast Cable Communications.   On June 6, 2013, I sent a summons to Comcast Cable Communications requesting subscriber information for the Target IP for the date and time that I downloaded one suspect child pornography videos from the Target IP, specifically, for June 5, 2013 at 11:46:14 GMT – 0400 hours.

29.     Between June 7, 2013 and June 11, 2013, I established a direct connection with the Target IP and downloaded 30 additional suspect child pornography files.

30.     On June 7, 2013, at approximately 20:21:10 GMT – 0400 hours, I established a direct connection with the computer utilizing the Target IP and downloaded one video file, which upon review I determined to contain suspect child pornography:

> File Name: "(Yamad Boy)Zadoom Pedo Russian Boy 11Yr With Long Cock Andy_s
> Friend1 2Of2 Bibcam - 2 Boys Having Fun (Andy And Friend).mpg"
> SHA 1 Hash Value: YD3OMPPEYQN6FMS33PWFCU3XUC2IFFXC

The video file was 25 seconds in length and began with two (2) minor males who appeared to be between 10 and 12 years old.   The two minor males were seated on a bed facing one another, with one male minor sitting on top of the other male minor's legs.   The male minors were masturbating each other while they were looking at adult magazines.  This continued throughout the duration of the video.

31.     On June 11, 2013, I received information from Comcast Cable Communications regarding the subscriber information for the Target IP.  According to Comcast, on June 5, 2013 at 11:46:14 GMT – 0400 hours, the Target IP was assigned to Adela GUTIERREZ at an address in Northwest Washington, D.C. ("Target Residence").

32.     On June 11, 2013, I received information from the Consolidated Lead Evaluation and Reporting (CLEAR) database that Adela GUTIERREZ was most recently associated with the Target Residence in June of 2012.   CLEAR also provided a cellular number for GUTIERREZ.

33.     On June 18, 2013, I sent a summons to Verizon Wireless for account information regarding the above cellular number.  On July 6, 2013, I received from Verizon Wireless regarding the cellular number account.  According to Verizon Wireless, the name listed on the

account was Adela GUTIERREZ.  The billing address listed on the account was the Target

Residence.

34.     On July 8, 2013, I sent a summons to Otis Gardens, Inc., which was previously

identified as the company that owns the apartment complex.  The summons was for information

regarding who was currently leasing the Target Residence.  According to the property manager,

Adela GUTIERREZ' name was listed as a tenant of the Target Residence.  The property

manager for Otis Gardens, Inc. also informed me that GUTIERREZ' son also lived at the Target

Residence.  On July 9, 2013, I received additional information from the property manager that

GUTIERREZ' son was named "Christian".

35.     On July 10, 2013, I located an alien file for Cristian GUTIERREZ.  According to

the alien file, GUTIERREZ was authorized for employment in the United States.  The home

address listed for GUTIERREZ was the Target Residence.

36.     On July 22, 2013, I received information from Facebook, Inc. regarding Cristian

GUTIERREZ' account, which is Facebook User ID cristian.gutierrez.58726823.  According to

Facebook, Inc., between June 10, 2013 at 20:34:43 Greenwich Mean Time (GMT) and June 11,

2013 at 3:35:14 GMT, GUTIERREZ' Facebook account was logged out eight times.  Over those

seven hours, I established a direct connection with the Target IP and was downloading suspect

child pornography files from the Target IP.  Facebook captured the IP address when the account

was logged out, and the IP address from Facebook was identical to the Target IP.

37.     GUTIERREZ' Facebook account was also logged out on July 2, 2012 at 3:00:17

GMT and 21:51:12 GMT.   Before and after the logged out times, I established a direct

connection with the Target IP and was downloading previously downloaded suspect child

pornography files from the Target IP. The IP address captured by Facebook matched the Target IP.

38.     On July 28, 2013, between 22:17:18 Greenwich Mean Time (GMT) and 22:42:31 GMT, I established a direct connection with the Target IP and downloaded nine (9) suspect child pornography videos. I viewed the nine (9) videos and determined that they depicted suspect child pornography videos.

39.     On August 10, 2013 and August 11, 2013, I established a direct connection with the Target IP and downloaded approximately 23 suspect child pornography files.

40.     On August 13, 2013, I received information from the Otis Gardens, Inc. property manager. According to the property manager, Adela GUTIERREZ still resided at the Target Residence but she is scheduled to move out by the end of August of 2013.

41.     During the course of this investigation to date, I have downloaded approximately 76 videos depicting child pornography after establishing a direct connection with the Target IP. These videos include depictions of prepubescent males engaging in sexual activity.

42.     A search warrant was obtained for the Target Residence and was executed on August 16, 2013. Various electronic items were seized, including a laptop computer that was located in Cristian GUTIERREZ's bedroom and cellular telephone that was used by Cristian GUTIERREZ. During an on-site preview of the laptop computer, law enforcement located numerous files depicting suspected child pornography.

43.     Cristian GUTIERREZ was interviewed by law enforcement at the time on August 16, 2013. GUTIERREZ initially denied possessing child pornography but eventually admitted that he downloaded the suspected child pornography files that were on the laptop computer.

GUTIERREZ was subsequently arrested and charged by Complaint with violating 18 U.S.C. § 2252(a)(2) (Distribution/Receipt of Child Pornography).

44.     Following GUTIERREZ's arrest, two 12-year old males reported to law enforcement that GUTIERREZ sexually abused them. Specifically, Minor #1 and Minor #2 both disclosed that GUTIERREZ used his hand to touch their genitals on top of their clothing on multiple occasions. Each minor disclosed that GUTIERREZ touched him while he was at GUTIERREZ' house. The minors have known GUTIERREZ since at least September 2012.

45.     In addition, Minor Male #1 disclosed that, using the text messaging feature of his cellular phone, GUTIERREZ sent the minor male a video of GUTIERREZ masturbating; asked the minor male to send him (GUTIERREZ) a video of the minor male masturbating; asked the minor male to send him (GUTIERREZ) pictures of the minor male in underwear with an erection so that GUTIERREZ could masturbate while looking at the pictures; asked the minor male if he would have oral sex or "hump" with GUTIERREZ; and offered to buy things for the minor male if the minor male agreed to engage in sexual activity or provide sexually explicit pictures to GUTIERREZ.

46.     An analysis of text messages on GUTIERREZ's cellular phone, which was seized pursuant to the search warrant executed on August 18, 2013, revealed numerous text messages between GUTIERREZ and Minor Male #1 that corroborate the disclosures of Minor Male #1 and Minor Male #2. For instance:

   a.     On July 16, 2013, at 5:15:19 AM, GUTIERREZ sent the following text message to Minor Male #1: "I mean for a pic of u naked I would buy u anything u want for the next 5 months."

14

b.      On July 20, 2013, at 5:08:03 AM, GUTIERREZ sent the following text message to Minor Male #1: "I wanna suck ur dick!! :) [smiley face]"

c.      On July 20, 2013, at 5:09:40 AM, GUTIERREZ sent the following text message to Minor Male #1: "So u want me to play with him [Minor Male #2] instead of u??"

d.      On July 20, 2013, at 5:16:48 AM, GUTIERREZ sent the following text message to Minor Male #1: "I will just find some one else to play with. And I stop playing with u and [Minor Male #2]."

e.      On July 22, 2013, at 12:41:57 AM, GUTIERREZ sent the following text message to Minor Male #1: "No before I order. Or if u want me to order u anything. We gonna talk bout us playing first. And about wether u like playing like that or no. And plz I beg of u to be honest...."

f.      On July 22, 2013, at 12:46:41 AM, GUTIERREZ sent the following text message to Minor Male #1: "So u dont like to when I touch ur dick?"

g.      On July 22, 2013, at 12:53:09 AM, GUTIERREZ sent the following text message to Minor Male #1: "We are talking about me touching ur dick?"

h.      On July 22, 2013, at 1:05:16 AM, GUTIERREZ sent the following text message to Minor Male #1: "Last question. Not including penetration cus I would never penetrate u. Would u ever consider having oral sex or humping each other??"

47.     The text messages further corroborate that Minor Male #1 and Minor Male #2 spent time at GUTIERREZ's house and occasionally went other places with GUTIERREZ, such as the movies and an amusement park.

15

48.     In addition to communicating by text message, Minor Male #1 and GUTIERREZ communicated using Facebook.  Their use of Facebook is corroborated by the text messages.  For instance, on August 3, 2013, at 11:56:14 PM, Minor Male #1 sent a text message to GUTIERREZ saying, "Lol [laugh out loud] she just talked to me :P [face with tongue sticking out] tty [talk to you] on fb [Facebook] my pone is dying."  GUTIERREZ responded at 11:58:08 PM, "Aahahah am not home right now and the Facebook on my phone is acting up and crashing on me."  A few minutes later, at 12:06:13 AM on August 4, 2013, GUTIERREZ sent a text message to Minor Male #1 saying, "Ok am gonna use the FB on my phone if I stop messaging is cus it crashed."  At 12:07:56 AM, GUTIERREZ asked Minor Male #1, "U on FB??"  Minor Male #1 replied, "Ye don't text back ma phone dying."  GUTIERREZ then said, "Ok get yo ass on FB and answer my question :) [smiley face]."

49.     Similarly, Minor Male #2 informed law enforcement that he communicated with GUTIERREZ using Facebook.  Minor Male #2 did not have a cellular phone.

50.     Minor Male #1's Facebook user ID is ██████████.

51.     Minor Male #2's Facebook user ID ██████████.

## STORED WIRE AND ELECTRONIC COMMUNICATION ACCESS

52.     Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

a.     Title 18, United States Code, Section 2703(b) provides, in part:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures

16

described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

b.   Title 18, United States Code, Section 2703(b) provides, in part:

(1) A governmental entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection -

(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant...

(2) Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service -

(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

(B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

17

c.     The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant.   18 U.S.C. § 2703(c)(1)(A).  No notice to the subscriber or customer is required.  18 U.S.C. § 2703(c)(3).

d.     Title 18, United States Code, Section 2711, provides, in part:

As used in this chapter -

(1) the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and

(2) the term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

e.     Title 18, United States Code, Section 2510, provides, in part:

(8) "contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication; . . .

(14) "electronic communications system" means any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications; . . .

(15) "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications; . . .

(17) "electronic storage" means –

> (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

> (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

53.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title, 18 United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section II of Attachment B.

## REQUEST FOR NON-DISCLOSURE BY PROVIDER

54.    Pursuant to Title 18, United States Code, Section 2705(b), I request that the Court enter an order commanding the provider Facebook not to notify any other person, including the subscribers of the accounts, of the existence of these warrants because there is reason to believe that notification of the existence of the warrant will result in destruction or tampering of evidence or otherwise seriously jeopardize the investigation.   Based on my training and experience, subjects of criminal investigations will often destroy digital evidence if the subjects learn of an investigation.   Here, the target is not aware of the full scope of this investigation.   If

the provider or other persons notify anyone that a warrant has been issued on the account, the target of this investigation and other persons may attempt to further mask their activities or destroy evidence, which could seriously jeopardize the investigation.

## CONCLUSION

55.     Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on the computer systems in the control of Facebook there exists evidence of violations of Title 18, United States Code, Sections 2251 and 2422(b). Accordingly, a search warrant is requested.

56.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 United States Code, Section 2711.   18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A).   Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."   18 U.S.C. § 2711(3)(A)(i).

57.    Pursuant to Title 18, United States Code, Section 2703(g), the presence of a law

enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,


Sherman Wooden
Special Agent
Immigration and Customs Enforcement
Homeland Security Investigations

Subscribed and sworn to before me
on October _____, 2013:


DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | : | Mag. No. _____ |
| INFORMATION ASSOCIATED WITH | : | |
| FACEBOOK USER ID | : | |
| Cristian.gutierrez.58726823 | : | **UNDER SEAL** |
| THAT IS STORED AT PREMISES | : | |
| CONTROLLED BY FACEBOOK | : | |

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

This warrant applies to information associated with the Facebook user ID **Cristian.gutierrez.58726823** that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered at 151 University Avenue, Palo Alto, California 94301.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **IN THE MATTER OF THE SEARCH OF** | : | Mag. No. _____ |
| **INFORMATION ASSOCIATED WITH** | : | |
| **FACEBOOK USER ID** | : | |
| **Cristian.gutierrez.58726823** | : | **UNDER SEAL** |
| **THAT IS STORED AT PREMISES** | : | |
| **CONTROLLED BY FACEBOOK** | : | |

**ATTACHMENT B**

**PARTICULAR THINGS TO BE SEIZED**

I.      **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession,

custody, or control of Facebook, Facebook is required to disclose the following information to

the government for the user ID listed in Attachment A:

(a)     All Machine Cookies meaning, every user that logged into his or her account from

the same machine as to the target.

(b)     Information added to the about section of the timeline like relationships, work,

education, where they live and more.  Any updates or changes made in the past

and what is currently in the about section of the timeline.

(c)     Account Status History:  dates when the account was reactivated, deactivated

disabled or deleted.

(d)     Active Sessions:  All stored active sessions, including date, time, device, IP

address, and machine cookie and browser information.

(e)     Ads Clicked:  Dates, times and titles of ads clicked.

(f)     Address:  Current address or any past addresses on the account.

23

(g)     Ad Topics:  A list of topics that may be targeted against based on the stated likes, interests and other data inputted in the timeline.

(h)     Alternate Name:  Any alternate names that may appear on the account.

(i)     Apps:  All of the apps that have been added.

(j)     Birthday Visibility:  How the birthday appears on the timeline.

(k)     Chat:  A history of the conversations user's had on Facebook Chat

(l)     Check-ins:  The places user has checked into.

(m)     Connections:  The people who have liked the users Page or Place, RSVP'd to the user's events, installed the user's app or checked in to the user advertised place within 24 hours of viewing or clicking on an ad or Sponsored Story.

(n)     Credit Cards:  Any information of any purchases made on Facebook that have given Facebook credit card number information.

(o)     Currency: The preferred currency on Facebook, if Facebook Payments were utilized.

(p)     Current City:  The city the user added to the about section of their timeline.

(q)     Date of Birth:  The date the user added to Birthday in the about section of their timeline.

(r)     Deleted Friends:  People the user has removed as friends.

(s)     Education:  Any information added to the Education field in the about section of the timeline.

(t)     Emails: Email addresses added to the users account (even those they may have removed).

(u)     Events:  Events user has joined or been invited to.

24

(v)     Facial Recognition Data:  A unique number based on a comparison of the photos that the user is tagged in.

(w)    Family:  Friends the user has indicated are family members.

(x)     Favorite Quotes:  Information that was added to the Favorite Quotes section of the about section of the timeline.

(y)     Followers:  The list of people who follow the user.

(z)     Following:  The list of people who the user follows.

(aa)    Friend Requests:  Any Pending sent and received friend requests.

(bb)    Friends:  A list of all the friends.

(cc)    Gender:  The gender the user added to the about section of his timeline.

(dd)     Groups:  A list of groups the user belongs to on Facebook.

(ee)    Hidden from News Feed:  Any friends, apps or pages that are hidden from the user News Feed.

(ff)     Hometown:  The place the user added to hometown in the about section of his timeline.

(gg)    IP Addresses:  A list of IP addresses where the user has logged into their Facebook account (won't include all historical IP addresses as they are deleted according to a retention schedule).

(hh)    Last Location:  The last location associated with an update.

(ii)     Likes on Others' Posts: Posts, photos or other content the user has liked.

(jj)     Likes on Your Posts from others:  Likes on the user own posts, photos or other content.

(kk)    Likes on Other Sites:  Likes the user has made on sites off of Facebook.

(ll)     Linked Accounts:  A list of the accounts the user has linked to their Facebook
         account.

(mm)    Locale:  The language the user has selected to use Facebook in.

(nn)     Logins:  IP address, date and time associated with logins to the users Facebook
         account.

(oo)     Logouts:  IP address, date and time associated with logouts from the user
         Facebook account.

(pp)     Messages:  Messages the user sent and received on Facebook.

(qq)     Name:  The name the user has on his Facebook account.

(rr)     Name Changes:  Any changes the user made to the original name that was used
         when they signed up for Facebook.

(ss)     Networks:  Networks (affiliations with schools or workplaces) that the user you
         belongs to on Facebook.

(tt)     Notes:  Any notes the user has written and published to their account.

(uu)     Notification Settings:  A list of all the user notification preferences and whether
         they have email and text enabled or disabled for each.

(vv)     Pages You Admin:  A list of pages the user admin.

(ww)    Pending Friend Requests:  Pending sent and received friend requests.

(xx)     Phone Numbers:  Mobile phone numbers the user added to the account, including
         verified mobile numbers they have added for security purposes.

(yy)     Photos:  Photos the user has uploaded to the account.

(zz)     Photos Metadata:  Any metadata that is transmitted with the user's uploaded
         photos.

(aaa)   Physical Tokens:  Badges the user has added to your account.

(bbb)   Pokes:  A list of who's poked the user and who has the user poked.

(ccc)   Political Views:  Any information added to Political Views in the about section of timeline.

(ddd)   Posts by Users:  Anything the user posted to their own timeline, like photos, videos and status updates.

(eee)   Posts by Others:  Anything posted to the user's timeline by someone else, like wall posts or links shared on the user's timeline by friends.

(fff)   Posts to Others:  Anything the user posted to someone else's timeline, like photos, videos and status updates.

(ggg)   Privacy Settings: The user's current privacy settings.

(hhh)   Recent Activities:  Actions the user has taken and interactions the user recently had.

(iii)   Registration Date:  The date the user joined Facebook.

(jjj)   Religious Views:  The current information the user added to Religious Views in the about section of the timeline.

(kkk)   Removed Friends:  People the user removed as friends.

(lll)   Screen Names:  The screen names the user added to the account, and the service they're associated with.

(mmm)Searches:  Searches the user made on Facebook.

(nnn)   Shares Content:  Anything the user shared with others on Facebook using the Share button or link.

(ooo)   Spoken Languages:  The languages the user added to Spoken Languages in the about section of the timeline.

(ppp)   Status Updates:  Any status updates the user has posted.

(qqq)   Work:  Any current information the user added to Work in the about section of the timeline.

(rrr)   Vanity URL: The user Facebook URL

**(sss)**   Videos:  Videos the user has posted on the timeline.

**II.**   **Information to be seized by the government**

All information described above in Section I that constitutes the fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 2251 and 2422, involving all the Facebook ID identified in Attachment A.

**III.**   **By Order of the Court**

1.     Pursuant to 18 U.S.C. § 2705(b), the Court orders Facebook not to notify any person of the existence of this warrant for 180 days from service of this attachment.

2.     The Court further orders Facebook to continue to maintain the Facebook account associated with all the Facebook user IDs identified in Attachment A, in an open and active status so as not to disrupt this ongoing investigation.